NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **MICHAEL ADIGHIBE, SAM ENYIA, STANLEY OGBUEHI, STELLA OJUKWU, EMMANUEL ONOKAHAH, TOM IBEJI, CHARLES OSUWAH, THEO ENYIA, DANIEL NKMEMAKOLAM** | Civil Action No. 07-cv-1250 (PGS) |
| Plaintiffs | OPINION |
| v. |  |
| **CLIFTON TELECARD ALLIANCE, IDS Telecom Corp. d/b/a ClearTel** |  |
| Defendants. |  |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on motion of Defendant, Clifton Telecard Alliance ("Clifton") to dismiss (Fed. R. Civ. P. R. 12(b)(6)), and countermotion by Plaintiff to amend the complaint.

On March 15, 2007, Plaintiffs filed a class action complaint against the Defendants Clifton Telecard Alliance ("Clifton") and IDS Telecom Corp., ("IDS") alleging fraudulent and deceptive practices in the sale, distribution and marketing of Defendants' prepaid phone cards throughout the United States. Plaintiffs are seeking damages and injunctive relief. In lieu of answering the complaint, Defendant Clifton moved to dismiss the Complaint in its entirety pursuant to Fed.R.Civ.P. 12(b)(6). Clifton asserts that this Court lacks subject matter jurisdiction under the Class Action Fairness Act of 2005, that the Complaint is barred by the applicable statute of limitations and

fails to state a claim upon which relief can be granted. It should be noted that the parties concede Defendant IDS (d/b/a ClearTel) is an improper party. It appears that there is more than one company doing business as ClearTel and Plaintiff served the wrong company. Recently Plaintiff ascertained the proper corporate name and location of the appropriate defendant. Accordingly, Plaintiffs move to amend their complaint to assert a claim against Cleartel (39018097 Canada Inc.). The motion to amend the Complaint is granted. Fed.R.Civ.P. R. 15(a).

According to the Amended Compliant, purchasers of prepaid telephone calling cards ("prepaid phone cards") are seeking relief from the predatory and fraudulent practices of Clifton and ClearTel, on behalf of the representative Plaintiffs and all other persons ("The Class") who have purchased prepaid phone cards from Clifton since 1995. Clifton has produced, sold, and distributed prepaid phone cards, and associated support services within the State of New Jersey and elsewhere in the United States since 1995.

Generally, prepaid phone cards are purchased to make long-distance calls. The advertised rates, especially for international calls, are frequently lower than that of regular telephone companies. Prepaid phone cards are sold in retail outlets, such as convenience stores and gas stations, and are largely promoted in low-income and immigrant communities. A toll-free number and a personal identification number (PIN) are commonly printed on the card. Calls are made by dialing the access number and then entering the PIN. An automated voice instructs the user to enter the phone number being called and states how much time is left on the card. The PIN number is used by phone card companies to keep track of how much time is left on the card. Time can be added to some prepaid phone cards. Most phone cards are non-renewable. Here, the prepaid phone cards are available in various dollar amounts, ranging from $2.00 to $100.00 per card as well as various dollar value

increments in between. Where retailers sell prepaid phone cards, they also generally display advertising and marketing materials which are provided by the issuer of the cards. These advertising and marketing materials guarantee the consumer a specific number of minutes of call time available upon purchase of the particular card. Users are specifically informed by prompts that a certain number of minutes are available. However, Plaintiffs allege the number of minutes available is consistently less than the announced and advertised number of minutes. According to Plaintiff, in virtually all instances, users simply learn that their card's time value has diminished without a method to determine the basis and legitimacy for the loss of time. In addition, there are various connection fees and other charges which deprive consumers of the full value of the minutes advertised on the prepaid phone cards.

The Complaint does not clearly state the precise role of Clifton in the prepaid phone card business except to allege that Clifton is a New Jersey corporation with significant business activity in New Jersey, and throughout the United States. Generally, Clifton is engaged in the business of producing, marketing, and distributing prepaid phone cards and services throughout the United States. Defendant produces, sells, and distributes many different versions of the prepaid phone cards.

In support of its motion, Clifton proffers the affidavit of Mohd Quattos, a principal of Clifton. Quattos concedes that Clifton is a business operating under the laws of New Jersey and is a distributor of prepaid phone cards which sells mainly to other distributors. However, Clifton acknowledges that it makes some sales directly to consumers via Defendant's webpage. Generally, the retail value of its cards are between $2 to $100. Clifton argues that it is merely a middle-man. It is ClearTel, the carrier which establishes the terms and conditions of the usage including fees and charges. Clifton does not have the capability of altering rates associated with the phone cards,

alleging "[a]ny such rates can only be altered by those entities upstream from defendant." In addition, Clifton places a disclaimer notice on all the cards it distributes. According to Mr. Quottos, the disclaimer serves in part to "clearly alert buyers of the conditions associated with the use of [prepaid phone cards], including but not limited to surcharges, fees, taxes, and that all rates and fees vary and are subject to change without notice." Clifton designed and manufactured prepaid phone cards, and the cards prominently display Clifton's identity. At this point, the nature of the relationship between Clifton and ClearTel has been inadequately explained.

*Discussion:*

Pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. Previously, a motion to dismiss would be granted "only if it appear[ed] that the plaintiff could prove no set of facts that would entitle [him] to relief." *Watson v. Abington Twp.*, 478 F.3d 144, 150-51 (3d Cir.2007) (internal quotations omitted).

In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), the Supreme Court changed the standard, stating that the " 'no set of facts' language has been questioned, criticized, and explained away long enough . . . [T]his famous observation has earned its retirement." *Bell Atlantic Corp.*, 127 S.Ct. at 1969. According to the Supreme Court, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . .." *Id*. at 1964-65 (internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . .

4

." *Id.* at 1965.

Defendants argue that this Court does not have subject matter jurisdiction over this action because the Complaint does not comply with the requirements of the Class Action Fairness Act (CAFA)[1].

Under the CAFA, a plaintiff may bring a class action in federal court when (1) the plaintiff alleges there are 100 or more members in the purported class; (2) the plaintiff, as putative class representative, has a different citizenship from at least one defendant; and (3) the amount in controversy exceeds the sum or value of $5 million in the aggregate, exclusive of interest and costs. 28 U.S.C. § 1332(d). This Court has a "continuing obligation to investigate their jurisdiction over the matters before them." *Golden ex rel. Golen v. Golden*, 382 F.3d 348, 354 (3d Cir.2004); *Huber v. Taylor,* No. 02-304, 2007 U.S. Dist. LEXIS 31131 at *30 (W.D.Pa. Apr. 27, 2007). *See also Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir.2003). Moreover, the court "may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." *Frederico v. Home Depot*, 507 F. 3d 188, 198-99 (3d Cir. 2007).

Pursuant to § 1332(d) "the number of members of all proposed plaintiff classes in the aggregate" must not be less than 100. 28 U.S.C. § 1332(d)(2)(5)(B). Plaintiffs have pled that there are "hundreds" of persons who are members of the class (Amend. Compl. ¶ 14). The Complaint identifies eight plaintiffs. It seems to reason that Plaintiff will satisfy this condition given the wide

---

[1] Defendants also argue that this Court lacks subject matter jurisdiction over the action because there is no diversity. This argument fails to recognize that this class action filed on June 21, 2007, is subject to the Class Action Fairness Act. *Beegal v. Park W. Gallery,* 2006 WL 2645123, *7, (D.N.J. 2006); 28 U.S.C. § 1332(d)(2) ("CAFA").

spread use of prepaid phone cards. Clifton suggests that Plaintiff must individually identify 100 class members at this time to meet this prong of CAFA. Clifton fails to cite to any case law to support this conclusion. The allegations of the Complaint are sufficient.

The second requirement for jurisdiction pursuant to CAFA is that minimal diversity of citizenship exist. That is, any one member of the class must be a citizen of a State different from any defendant. *Duruaku v. BB&T Bank*, No. 05-5285, 2006 WL 1805887 (D.N.J. June 29, 2006). Clifton is a New Jersey corporation, while Plaintiffs are citizens of Florida, New York, Illinois, Pennsylvania, and New Jersey, which satisfies the diversity requirement of CAFA. *See* 28 U.S.C. §§ 1332(d)(2)-(5).

Lastly, the controversy must exceed $5 million in aggregate. Clifton contends that Plaintiffs bear the burden of establishing that the damages exceed $5 million. At the outset, this is not a removal case; hence, some of the thorny issues surrounding which party bears the burden of proof with regard to this requirement of CAFA are not present. *Morgan v. Gray*, 471 F.3d 469, 474 (3d Cir. 2004). Defendants are correct that appropriate test is the legal certainty test.

In order to determine whether the jurisdictional amount ($5 million) is met, the Court must utilize one of two tests depending upon the circumstances. Where the underlying facts are not disputed, the legal certainty test is employed. It states that a case will only be dismissed when it appears to a legal certainty that the plaintiff was never entitled to recover the jurisdictional amount. *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 398 (3d Cir. 2004). Where the underlying facts are in dispute, the Court will demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence. *Fredrico*, 507 F. 3d at 194-195; *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178 (1936); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*,

303 U.S. 283 (1938). In this case, the Defendant has not submitted an affidavit in opposition to the $5 million requirement. Clifton merely questions the sufficiency of Plaintiff's allegations. Since there is no factual dispute raised, the Court will employ the legal certainty test. *Frederico*, 537 F. 3d at 194.

The Amended Complaint alleges that:

(a) prepaid phone cards are sold in denominations of $2 to $100 per card (para 6);

(b) there are hundreds of calling card products (para. 9);

(c) prepaid phone cards are sold in convenient retail outlets mostly to immigrants;

(d) the industry has revenues in the billions (para. 8);

(e) the deceptive practices of Clifton commenced in 1995 (para. 20); and finally

(f) the class is "more than 100 and is estimated to be in the millions" because "defendant CTA holds itself out as one of the largest producers and distributors . . . in the United States (para. 21).

Based on these allegations, the Court is mindful that its determination requires a "reasonable reading of the value of rights being litigated." *Angus v. Shiley*, 989 F. 2d 142, 146 (3d Cir. 1993). Although it is not set forth in the Complaint, it is reasonable to assume, based on the allegations, at this early juncture, that the typical class member suffered damages of $100 over six years,[2] that Plaintiff seeks treble damages under the Consumer Fraud Act or 3 x $100 = $300. In addition, legal fees may be awarded at 30% or $90.00. Rounding to $400 per member, the class must consist of 12,500 members to proceed. Plaintiff alleges the class may exceed 1 million members. This is not

---

[2] For purposes of this motion, the Court assumes the statute of limitations is six years.

an unreasonable estimate for several reasons.  First, the size of the immigration population in the United States is immense and this is the primary market. Second, the prepaid phone card industry is a multibillion dollar business. Lastly, from ordinary experience, one knows that prepaid phone cards are a commonly used commodity. Hence, the Court finds that it cannot be concluded to a legal certainty that plaintiffs can not recover the jurisdictional amount.  *Frederico*, 507 F. 3d at 199-200.

Assuming for the moment the Court's analysis is wrong, it is not a fatal mistake.  The Court has an ongoing obligation to review jurisdictional pre-requisites, and it will also do so upon motion *Golden ex rel. Golen v. Golden*, 382 F.3d 348, 354 (3d Cir.2004).  In addition, it is likely that the issue will be reviewed two more times when plaintiff moves for class certification (FRCP 23) and when carrier (once it is served) answers or otherwise pleads (FRCP 12(b)(6)).

Clifton's Remaining Arguments

Clifton raises a host of arguments including the statute of limitations which it alleges warrant dismissal of the Complaint.  The Court finds the remaining arguments are premature.  In the Court's view, the outcome of the remaining issues may hinge on the relationship among Clifton, the telecom carrier, and Clifton's customers.   The Court lacks sufficient information regrading those relationships to make any determination. They are denied without prejudice.

                                                 *s/Peter G. Sheridan*
                                                 PETER G. SHERIDAN, U.S.D.J.

April 7, 2008